# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
(Filed:  March 12, 2018)

| | |
|---|---|
| * * * * * * * * * * * * * *   * | UNPUBLISHED |
| HEIDI DOMKE, | * |
| | *   No. 16-307V |
| Petitioner, | * |
| | * |
| v. | *   Chief Special Master Dorsey |
| | * |
| SECRETARY OF HEALTH | *   Attorneys' Fees and Costs; Remand; |
| AND HUMAN SERVICES, | *   Reasonable Basis. |
| | * |
| Respondent. | * |
| | * |
| * * * * * * * * * * * * * *   * | |

Edward M. Kraus, Law Offices of Chicago Kent, Chicago, IL, for petitioner.
Debra A. Filteau Begley, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION ON REMAND[1]

On March 9, 2016, Heidi Domke ("petitioner") filed a petition for compensation in the National Vaccine Injury Compensation Program[2] alleging that she suffered from an anaphylaxis reaction and brachial neuritis after receiving the Tetanus, Diphtheria, Pertussis ("Tdap") vaccination on March 13, 2013.  Petition at Preamble.  Alternatively, petitioner alleged that she "suffered an immune-mediated inflammatory condition," "aggravated ongoing environmental allergies," and "increased sensitivity to environmental and chemical irritants," as a result of the Tdap vaccination.  Id.  On June 27, 2017, the case was dismissed for failure to prosecute.

---

[1] This decision will be posted on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, 44 U.S.C. § 3501 (2012).  **This means the Decision will be available to anyone with access to the internet.**  As provided by 42 U.S.C. § 300aa-12(d)(4)B), however, the parties may object to the published Decision's inclusion of certain kinds of confidential information.  Specifically, Under Vaccine Rule 18(b), each party has 14 days within which to request redaction "of any information furnished by that party:  (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy."  Vaccine Rule 18(b).  Otherwise, the whole decision will be available to the public in its current form.  Id.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act").  All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

Petitioner filed a motion for attorneys' fees and costs on October 10, 2017, requesting a total of $25,905.09 in attorneys' fees and costs.  Petitioner's Application ("Pet. App.") dated Oct. 10, 2017 (ECF No. 34).  On October 24, 2017, Special Master Millman issued a decision denying attorneys' fees and costs, finding that the claim had no reasonable basis.  Decision dated Oct. 24, 2017 (ECF No. 36).  Petitioner filed a motion for review on November 21, 2017.  On February 8, 2018, petitioner filed a supplemental application for attorneys' fees, requesting an additional $10,913.40[3] for the appeal, bringing the total amount requested to $36,818.49.  The case was remanded to the undersigned on February 13, 2018, for further consideration in light of the Federal Circuit's recent decision in Simmons v. Sec'y of Health & Human Servs., 875 F.3d 632 (Fed. Cir. 2017).

For the reasons discussed below, the undersigned GRANTS petitioner's motion for attorneys' fees and costs and awards a total of $33,447.69.

## I.  Relevant Facts[4]

Petitioner received the Tdap vaccination on March 13, 2013.  Pet. Ex. 4 at 1.  On March 15, 2013, she presented to an urgent care center complaining of a possible reaction to Tdap, stating that on the evening that she received her vaccination, she began experiencing problems breathing and felt weak.  Id. at 2.  She was diagnosed with a "tetanus vaccination reaction," and was discharged with instructions to rest and take ibuprofen and acetaminophen.  Id. at 4.

The following day, petitioner visited a different urgent care clinic, where Narda Sherman, a physician's assistant, noted that petitioner reported that "within 50 minutes and since" her Tdap vaccination on March 13, 2013, she had been experiencing rash and muscle weakness.  Ex. 5 at 17.  Ms. Sherman also stated that petitioner's face and chest were flushed.  Id.  Petitioner began taking Prednisone that day.  Id.

On March 22, 2013, petitioner was referred to Dr. Scott Cameron, an allergist, for an evaluation.  He noted that petitioner had a "possible vaccine reaction," and that she had previously experienced "fever and malaise" following a Tdap vaccination in 1997.  Pet. Ex. 5 at 3.  Dr. Cameron stated that after petitioner received the March 13, 2013 Tdap vaccination, she "developed a headache, [and] … felt she was short of breath," and "developed rhinitis, and started to get itchy," within 45 minutes of receiving the vaccination.  Id.  He also noted that petitioner developed hives within 72 hours of her vaccination.  Id.  Although the epicutaneous testing to Tdap performed during this visit was negative, Dr. Cameron stated that "[a] reaction to Tdap cannot be ruled out based on today's testing."  Id. at 4.

---

[3] In the text of petitioner's supplemental motion for fees, counsel requested $10,813.40 in supplemental fees for time spent preparing the motion for review. Pet. Notice dated Feb. 8, 2018 (ECF No. 43) at 3.  However, counsel's invoice stated the total was $10,913.40.  Id., Tab D at 1.  The undersigned used the higher amount referenced on counsel's supplemental invoice, not the number stated in the motion.

[4] The undersigned has reviewed the entire record but recites only the facts which are relevant to her determination of reasonable basis.

Petitioner saw an internist, Dr. Stephen Roome, on April 17, 2013, for complaints of weakness and pain in her deltoid and pectoral muscles. Pet. Ex. 11 at 10. Dr. Roome stated that petitioner was "having further fallout from her vaccination reaction. She initially had severe hives and difficulty breathing and pain through her upper axial muscles …. About five days after she developed muscle weakness in the shoulders and the arms …. This has persisted." Id. Dr. Roome noted at a visit on June 25, 2013, that petitioner "continued [to experience] neuromuscular symptoms post vaccination reaction," and that she had weakness in her arms and legs. Id. at 6. Petitioner continued to follow up with Dr. Roome throughout 2013 with continued complaints of arm and leg weakness and pain. Id. at 1-11.

On December 19, 2013, petitioner saw a neurologist, Dr. Wayne Shtybel, who noted that although her neurologic examination was normal, petitioner "has a picture that is suggestive of multiple chemical sensitivities, multiple environmental allergies, and she has had reactions after both TDP vaccinations." Pet. Ex. 11 at 26. He recommended that petitioner forego further Tdap vaccinations. Id.

On January 13, 2014, petitioner saw another allergist, Dr. Liliane Gendreau-Reid, who noted that petitioner experienced significant respiratory symptoms year round, including "itchy, watery, red eyes; sneezing …; nasal congestion and no sense of smell (pre-vaccine; acute sense of smell post [Tdap] vaccine); sinus pressure and headache; post nasal drip; chest tightness; and a cough from the chest." Pet. Ex. 11 at 23. Dr. Gendreau-Reid further noted that "[b]ecause of [these] sinus problem[s] she has not been feeling well for 10 months since the [Tdap] vaccine and she is more sensitive to environmental irritants such as chemical smells; she tastes chlorine etc." Id. Dr. Gendreau-Reid's diagnosis was "probabl[e] non-IgE mediated reaction to Td." Pet. Ex. 3 at 2.

Petitioner saw Dr. Agnieszka Thompson for a dermatology consult at the Mayo Clinic on February 8, 2015, complaining of "intermittent facial flaking, erythema, and inflammatory papules and pustules, particularly around her mouth," for the past 23 months since her Tdap vaccination. Pet. Ex. 8 at 10. Dr. Thompson also noted that petitioner has "some skin sensitivity to irritants in the air such as perfumes and truck exhaust," which cause rashes. Id. at 11. Dr. Thompson stated that petitioner's symptoms "could suggest an allergic process." Id. at 14.

## II. Procedural History

Petitioner filed her petition on March 9, 2016, alleging that the Tdap vaccination she received on March 13, 2013, caused anaphylaxis, brachial neuritis, or alternatively, "an immune-mediated inflammatory condition resulting in pain, tightness and weakness in her left arm, shoulder and chest[,] as well as aggravated ongoing environmental allergies and increased sensitivity to environmental and chemical irritants." Petition at Preamble. The case was assigned to the Special Processing Unit ("SPU"). On March 21, 2016, petitioner filed medical records in support of her petition as Exhibits 1-18. Petitioner filed additional medical records and a statement of completion on April 26, 2016. Statement of Completion dated April 26, 2016 (ECF No. 12).

Respondent requested additional medical records on May 9, 2016, which were filed on July 11, 2016.  On October 17, 2016, respondent filed a Rule 4(c) Report recommending against compensation.  Thereafter, the case was reassigned from SPU to Special Master Millman for further proceedings, as the case no longer fit the criteria for SPU.  Petitioner was ordered to file an expert report by March 24, 2017.  Petitioner subsequently filed three unopposed motions for extension of time to file an expert report from an immunologist.  During a status conference held on June 27, 2017, petitioner indicated that she was unable to retain an expert to opine as to causation in her case and requested that the case be dismissed.  The case was dismissed the same day.  Decision dated June 27, 2017 (ECF No. 30).  Judgment entered on July 28, 2017.

On October 10, 2017, petitioner filed a motion for attorneys' fees and costs.  Petitioner requested $21,556.90 in attorneys' fees and $4,348.19 in attorneys' costs, for a total of $25,905.09.  Pet. App. at 1.  Counsel stated that petitioner did not incur any costs in pursuit of the litigation.  Id.  Respondent filed a response on October 23, 2017, deferring to the special master's discretion with regard to attorneys' fees and costs.  Respondent's Response ("Resp.") dated Oct. 23, 2017 (ECF No. 35) at 3.  Respondent did not raise the issue of reasonable basis and instead stated that he was "satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case."  Id. at 2.

On October 24, 2017, Special Master Millman issued a decision denying attorneys' fees and costs.  Decision dated Oct. 27, 2017 (ECF No. 36).  While the special master found that the petition was filed in good faith, she found that the claim lacked reasonable basis, reasoning that the medical records did not demonstrate that petitioner suffered from an adverse reaction from the Tdap vaccination for more than six months.  Id. at 4.  The special master also discussed counsel's duty to investigate a claim prior to its filing and pointed to several entries in petitioner's counsel's billing records which showed that counsel delayed seeking medical records until months after he was contacted by petitioner.  Id. at 4-5.  Special Master Millman concluded that if counsel had reviewed the medical records prior to the filing of the petition, he would have realized that there was no reasonable basis for petitioner's claim.  Id. at 5.

Petitioner filed a motion for review of the special master's decision on November 21, 2017, and the case was assigned to Chief Judge Susan Braden.  Petitioner argued that Special Master Millman incorrectly applied the totality of the circumstances test in determining that petitioner's counsel was not entitled to fees and costs.  Pet. Memorandum dated Nov. 21, 2017 (ECF No. 39) at 5.  Respondent filed a response on December 21, 2017, arguing that the totality of the circumstances test no longer applied due to the Federal Circuit's recent decision in Simmons, 875 F.3d 632.  Respondent's Response dated Dec. 21, 2017 (ECF No. 41) at 6.  Nevertheless, respondent argued that Special Master Millman correctly decided that the case lacked reasonable basis, because her decision "focused on whether the objective evidence provided a factual basis for petitioner's case."  Id.

On February 5, 2018, Chief Judge Braden issued an order directing petitioner to file additional documentation, including a description of the work performed by counsel; a description of the attorneys working on the case and the explanation for their hourly rates; information regarding the compensation of attorneys employed by Chicago Kent Law School,

petitioner's counsel's employer; and further information regarding the payment of experts. Order dated Feb. 5, 2018 (ECF No. 42).

Petitioner filed the information requested by Chief Judge Braden on February 8, 2018. Notice dated Feb. 8, 2018 (ECF No. 43). Petitioner provided an invoice with further detail as to the work performed. Id. at 1. Petitioner's counsel also provided information regarding the background and experience of Professor Kraus and Ms. Kraus, as well as citations to previous cases in which they have been awarded their requested hourly rates. Id. at 2-3; see also id., Tab B. Counsel further stated that the law school clinic in which they practice, known as CK Law Group, "functions as a fee generating firm," at Chicago Kent Law School. Id. at 2. Professor Kraus' contract with the law school requires him to generate fees from the clinic to cover his salary and the salaries of his associates. The attorneys are not otherwise compensated by the law school for their work. Id. Ms. Jennifer Huerta, CK Law Group's paralegal, is compensated by the law school, and Professor Kraus' contract also entitles him to legal administrative services, from which he receives fees for her work. Id.

Petitioner's February 8, 2018 filings also provided an explanation of petitioner's expert costs. Notice at 3. Petitioner included a check requisition and a cancelled check for Dr. Byers, showing that $2,000.00 was paid for her services. Id., Tab C. Counsel further explained that while an invoice for Dr. Axelrod's expert work was filed, evidence of payment to Dr. Axelrod was not filed, as Dr. Axelrod agreed to accept payment of his invoice after petitioner's counsel was awarded fees in the case. Id. at 3. Counsel explained that some experts in the Vaccine Program are willing to defer payment on their invoices until after a decision awarding fees and costs has been entered so as to ease the financial burden of counsel, who may incur costs for several years before being reimbursed. Id.

Along with this additional information, petitioner also filed a supplemental application for an additional $10,913.40 in attorneys' fees related to the filing of the motion for review. Notice at 20. Petitioner thus requests a total of $36,818.49 in attorneys' fees and costs.

On February 13, 2018, Chief Judge Braden issued an order remanding the case to the undersigned, finding that due to the Federal Circuit's ruling in Simmons, 875 F.3d 632, "there is insufficient analysis for the Court to properly review the Special Master's finding that the … case lacked a reasonable basis." Order dated Feb. 13, 2018 (ECF No. 44). Chief Judge Braden requested that the undersigned adjudicate petitioner's motion for attorneys' fees and costs in light of the Federal Circuit's recent decision in Simmons and the additional information provided by petitioner's counsel. Id.

## III.   Good Faith and Reasonable Basis

Under the Vaccine Act, an award of reasonable attorneys' fees and costs is mandatory where a petitioner is awarded compensation. But where compensation is denied, as it was in this case, the special master must first determine whether the petition was brought in good faith and the claim had a reasonable basis. § 15(e)(1).

### a.  Good Faith

The good faith requirement is met through a subjective inquiry.  Di Roma v. Sec'y of Health & Human Servs., 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993).  Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." Grice v. Sec'y of Health & Human Servs., 36 Fed. Cl. 114, 121 (1996).  Thus, so long as the petitioner had an honest belief that her claim could succeed, the good faith requirement is satisfied.  See Riley v. Sec'y of Health & Human Servs., 2011 WL 2036976, at *2 (Fed. Cl. Sepc. Mstr. Apr. 29, 2011) (citing Di Roma at *1); Turner v. Sec'y of Health & Human Servs., 2007 WL 4470030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007).  In this case, the record supports the supposition that petitioner brought the claim in a sincere belief that she was injured by the Tdap vaccination she received on March 13, 2013.  See Petition at Preamble.  As such, the undersigned finds good faith.

### b.  Analysis of Reasonable Basis

Regarding the reasonable basis requirement, it is incumbent on petitioner to "affirmatively demonstrate a reasonable basis," which is an objective inquiry.  McKellar v. Sec'y of Health & Human Servs., 101 Fed. Cl. 297, 305 (2011); Di Roma, 1993 WL 496981, at *1. Unlike the good faith inquiry, reasonable basis requires more than just petitioner's belief in the claim.  See Turner, 2007 WL 4410030, at 6.  Instead, the claim must at least be supported by medical records or a medical opinion.  Sharp-Roundtree v. Sec'y of Health & Human Servs., 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).  The court expects the attorney to make a pre-filing inquiry into the claim to ensure that it has a reasonable basis.  See Turner at *6-7.

The undersigned was asked to evaluate petitioner's fee application in light of the additional evidence submitted by petitioner and the Federal Circuit's recent decision in Simmons.  The Circuit held in Simmons that while a looming statute of limitations deadline may excuse an attorney's duty to investigate a claim prior to filing a Vaccine Act petition, this does not create a reasonable basis for the claim.  857 F.3d at 636.  The Circuit stated, "Whether there is a looming statute of limitations deadline, however, has no bearing on whether there is a reasonable factual basis for the claim raised in the petition.  That is an objective inquiry unrelated to counsel's conduct."  Id. at 636 (internal quotations omitted).

The undersigned has reviewed the records, and based on an objective inquiry, finds that reasonable basis existed in this case for two reasons.  First, respondent did not object to petitioner's application on reasonable basis grounds.  To the contrary, in his response to petitioner's motion for attorneys' fees and costs, respondent stated that he was "satisfied that the statutory requirements for an award of attorneys' fees and costs [were] met in this case."  Resp. at 2 (citing 42 U.S.C. §300aa-15(e)(1)(A)-(B)).  The fact that respondent did not object to reasonable basis suggests that respondent concluded that there were sufficient facts set forth in petitioner's medical records to support the allegations in the petition.  While respondent's position is not determinative, it is noteworthy.

Second, the undersigned's review of the medical records shows that there are statements to support the allegation that petitioner suffered an immune-mediated condition which allegedly caused her to suffer increased environmental sensitivity.  The undersigned agrees with Special Master Millman and respondent's Rule 4(c) Report on the point that petitioner's medical records do not demonstrate that she suffered from either brachial neuritis or anaphylaxis.  See Decision at 2.  However, an objective review of the records shows that there is sufficient evidence to provide reasonable basis for the filing of the petition on the grounds that petitioner allegedly suffered increased environmental sensitivity.[5]

Two of petitioner's treating physicians noted a worsening of petitioner's condition after her receipt of the Tdap vaccine.  Medical records from a visit with Dr. Lilian Gendreau-Reid, M.D., petitioner's allergist, on January 13, 2014, document that approximately 10 months after she received the Tdap vaccination, petitioner had an "acute sense of smell post … vaccine," and that she was more sensitive to irritants in the environment such as chemical smells.  Pet. Ex. 3 at 2.  Dr. Gendreau-Reid's working diagnosis was "non-IgE mediated reaction to Td."  Id.  Petitioner was advised to avoid further Tdap vaccinations.  Id.  Further, at a dermatology consult with Dr. Agnieszka Thompson at the Mayo Clinic on February 13, 2015, petitioner complained of "intermittent facial flaking, erythema, and inflammatory papules," for the last 23 months.[6]  Pet. Ex. 8 at 10.  Dr. Thompson noted that petitioner "also note[d] some skin sensitivity to irritants in the air such as perfumes and truck exhaust," which caused her to develop rashes.  Id. at 11.  Dr. Thompson stated that petitioner's symptoms "could suggest an allergic process."  Id. at 14.  Thus, physician statements in the medical records establish a reasonable basis for petitioner's counsel to file the petition and pursue an expert opinion.

Petitioner was ultimately unable to find an expert to opine that the Tdap vaccination caused her to suffer from anaphylaxis, brachial neuritis, or an immune-mediated inflammatory condition resulting in pain, left arm weakness, and increased sensitivity to environmental and chemical irritants.  After having the claim reviewed by two different expert immunologists, counsel concluded that petitioner would not be able to preponderantly prove causation in her case.  Petitioner then timely dismissed her case.  The undersigned finds that, based on her review of the medical records and respondent's lack of objection, a reasonable basis existed at the time the claim was filed and continued until expert opinions could not be obtained and the case was dismissed.

## IV.  Evaluation of Requested Attorneys' Fees and Costs

Attorneys' fees in the Vaccine Program are calculated using the lodestar method, which involves multiplying a reasonable hourly rate by a reasonable number of billed hours.  Avera v.

---

[5] Because the undersigned finds reasonable basis in the medical records, she does not reach the issue discussed in Simmons regarding the interplay between counsel's conduct and the statute of limitations.

[6] Based on entries of problems at 10 and 23 months post vaccination, there was a reasonable basis for petitioner's counsel to believe that the six month severity requirement was satisfied.  42 U.S.C. §300aa-11(c)(1)(D)(i).

Sec'y of Health & Human Servs., 515 F.3d 1343, 1347-48 (Fed. Cir. 2008).  An attorney representing a petitioner in the Program is paid the forum rate unless the bulk of the work was performed in a locale other than the form (i.e., the District of Columbia), and the local rate is very significantly lower than the forum rate.  Id. at 1349.  If these two requirements are met, the Davis exception applies, and the attorney is paid according to the local rate.  Id. (citing Davis County Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. V. United States Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)).

Although not explicitly stated in the statute, the requirement that only reasonable amounts be awarded applies to costs as well as fees.  See Perriera v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd 33 F.3d 1375 (Fed. Cir. 1994).

Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs."  Hines v. Sec'y of Health & Human Servs., 22 Cl. Ct. 750, 753 (1991).  They may look to their experience and judgment to reduce the number of hours billed to a level they find reasonable for the work performed.  Saxton ex rel. v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993).  A line-by-line evaluation of the billing records is not required.  Wasson v. Sec'y of Health & Human Servs., 24 Cl. Ct. 482, 483 (1991) aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993) (per curiam).

Petitioner "bears the burden of establishing the hours expended, the rates charged, and the expenses incurred."  Wasson, 24 Cl. Ct. at 484.  Adequate proof of the claimed fees and costs should be presented when the motion is filed.  Id. at 484, n.1.  Counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  Hensley v. Eckhart, 461 U.S. 424, 434 (1983).

### a.  Reasonable Hourly Rates

Petitioner requests compensation for Professor Kraus at a rate of $375.00 per hour for work performed in 2015, $389.00 per hour for work performed in 2016, and $398.00 per hour for work performed in 2017.  Pet. App., Tab A.  Petitioner also requests compensation for Ms. Kraus at a rate of $311.00 per hour for work performed in 2016 and $318.00 per hour for work performed in 2017.  Id.  These hourly rates fall within the appropriate ranges listed on the Office of Special Masters' Hourly Rate Fee Schedules for 2015-2017.[7]  The undersigned and other special masters have previously found these hourly rates for Professor Kraus and Ms. Kraus to be reasonable.  Freedman v. Sec'y of Health & Human Servs., 16-1357V, 2017 WL 7688082 (Fed. Cl. Spec. Mstr. Oct. 20, 2017); Jackson v. Sec'y of Health & Human Servs., 14-1217V, 2017 WL 2243092 (Fed. Cl. Spec. Mstr. April 26, 2017).  The undersigned thus awards the requested hourly rates in full.

---

[7] The 2015-2016 Hourly Rate Fee Schedule can be accessed at: www.uscfc.uscourts.gov/sites/.../Attorneys-Forum-Rate-Fee-Schedule2015-2016.pdf. The 2017 Fee Schedule can be accessed at: http://www.cofc.uscourts.gov/sites/default/files/Attorneys-Forum-Rate-Fee-Schedule-2017.pdf.

**b. Reasonable Hours**

After closely reviewing petitioner's original fee application, the undersigned finds that counsel appropriately billed paralegal work at a paralegal hourly rate, [8] and the overall amount of time billed is not unreasonable. The undersigned will thus reimburse counsel in full for the original fee application, a total of $21,556.90 in attorneys' fees. Pet. App. at 1.

However, the undersigned finds petitioner's supplemental fee application for fees related to the motion for review to be excessive because of duplicative billing by Professor Kraus and Ms. Kraus. Petitioner's counsel requests $10,913.40 in fees for 30.1 hours of work on her motion for review and memorandum. Professor Kraus billed a total of 14.6 hours to draft and edit petitioner's memorandum, and Ms. Kraus similarly billed 10.6 hours for drafting and editing the same memorandum.[9] In the undersigned's experience in the Vaccine Program as well as with the work of Professor Kraus and Ms. Kraus, this request appears excessive.

The undersigned has previously found it reasonable to reduce the fees paid to counsel due to duplicative billing. See Ericzon v. Sec'y of Health & Human Servs., 10-103V, 2016 WL 447770 (Fed. Cl. Spec. Mstr. Jan 15, 2016); Bondi v. Sec'y of Health & Human Servs., 12-474V, 2017 WL 1046526 (Fed. Cl. Spec. Mstr. Feb. 23, 2017). The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one task and have reduced fees accordingly. See Sabella v. Sec'y of Health & Human Servs., 86 Fed. Cl. 201, 209 (Fed. Cl. 2009). The undersigned reduces petitioner's supplemental fee request for the time Ms. Kraus billed for drafting and editing the 15 page memorandum related to the motion for review, as she finds these billing entries excessive and duplicative of the time billed by Professor Kraus. **This results in a reduction of $3,370.80 in petitioner's supplemental fee application**.

**c. Costs**

Petitioner requests a total of $4,348.19 in attorneys' costs for expenses such as payment for medical records and the filing fee, as well as costs paid to two experts for reviewing the case. Pet. App. at 1. Petitioner requests $2,000.00 to compensate Dr. Vera Byers, M.D., Ph.D., for reviewing the case.[10] Pet. App., Tab B at 36. The undersigned finds Dr. Byers' costs reasonable and will reimburse petitioner in full for them.

---

[8] The undersigned notes her appreciation that petitioner's counsel billed at a paralegal's hourly rate when performing paralegal work and at an attorney's hourly rate when performing attorney work. The undersigned further finds petitioner's counsel's paralegal rates reasonable.

[9] The memorandum in support of the motion for review is 15 pages in length. See Pet. Memorandum dated Nov. 21, 2017 (ECF No. 39).

[10] Dr. Byers billed five hours of work at $400.00 per hour for reviewing medical records, but her invoice reflects that she spent a total of eight hours working on petitioner's case. Id. Dr. Byers did not charge for reviewing other Vaccine Program cases or for discussing the case with Professor Kraus. Id.

Petitioner also requests $1,200.00 for work performed by Dr. David Axelrod, who reviewed the case after Dr. Byers.  Dr. Axelrod performed a total of three hours of work, billed at $400.00 per hour, for "chart review," and "research."  Pet. App., Tab B at 37.[11]  The undersigned also reimburses this cost in full.

### V.  Conclusion

For the reasons set forth above, the undersigned finds that petitioner is entitled to an award of attorneys' fees and costs as follows:

**Attorneys' Fees**
| | |
|---|---|
| Original Application Total: | $21,556.90 |
| Reductions: | ($0.00) |
| | |
| Supplemental Application Total: | $10,913.40 |
| Reduction for Duplicative Billing | ($3,370.80) |
| | |
| **Total Fees Awarded:** | **$29,099.50** |

**Costs**
| | |
|---|---|
| Requested: | $4,348.19 |
| Reductions: | ($0.00) |
| | |
| **Total Costs Awarded:** | **$4,348.19** |

**Accordingly, the court awards $33,447.69, in the form of a check payable jointly to petitioner, Ms. Heidi Domke, and her attorney, Mr. Edward Kraus.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of court shall enter judgment in accordance herewith.[12]

**IT IS SO ORDERED.**

s/Nora Beth Dorsey
Nora Beth Dorsey
Chief Special Master

---

[11] While petitioner provided an invoice for Dr. Axelrod, the invoice was bare bones and was not descriptive of the work he performed.  The undersigned compensates Dr. Axelrod for reviewing the case but cautions that further invoices should contain more detail regarding the work performed.

[12] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.